JAMES W. (JIMMIE) LANE v. CHARLIE S. COE AND WIFE, LORA V. COE.

(Filed 20 May, 1964.)

**1. Frauds, Statute of § 2—**

In order to be sufficient to overcome the plea of the statute of frauds, the writing signed by the party to be charged must contain, expressly or

by necessary implication, all features of an agreement to sell, and contain a description of the lands certain in itself or capable of being reduced to a certainty by something extrinsic to which it refers. G.S. 22-2.

**2. Same;   Boundaries § 9—**

A description which leaves the identity of the land absolutely uncertain and refers to nothing extrinsic by which it may be identified with certainty is patently ambiguous and may not be aided by parol; a description which, although insufficient in itself to identify the property, refers to something extrinsic by which identification may be possible is latently ambiguous, in which case plaintiff may offer evidence *dehors* the instrument to identify the property and defendant may offer evidence tending to show impossibility of identification and thus show a fatal ambiguity.

**3. Same—**

The memorandum of the contract in suit described the subject lands as a house and lots on a specified highway where the seller's residence is located. *Held:* The description is not, as a matter of construction, patently ambiguous, and evidence *dehors* the memorandum is competent to identify the lands provided such evidence does not tend to substitute a new and different contract in contradiction of the writing.

**4. Same;   Evidence § 27—**

In this action to recover damages for breach of contract to convey, plaintiff introduced in evidence the memorandum signed by defendant. *Held:* Testimony of declarations of defendant with respect to the boundaries, descriptions and areas of the lands, made prior to or contemporaneously with the execution of the writing, is properly excluded as tending to substitute a new and different contract from that evidenced by the writing.

**5. Boundaries § 9;   Vendor and Purchaser § 3—**

Where, in an action for damages for breach of contract to convey, the purchaser introduces a memorandum signed by defendant describing the lands as house and lots where the vendor's residence is, and the vendor's answer identifies the property by lot numbers with reference to recorded deeds and a recorded map, and there is competent evidence tending to show that the lots were one connected body of land and that defendant had no other property on the highway specified, *held*, the identity of the land was sufficient as against the vendor's motion for nonsuit.

**6. Pleadings § 29;   Evidence § 20—**

Admissions in the pleadings of the adverse party obviate proof.

**7. Appeal and Error § 51—**

On appeal from a judgment of involuntary nonsuit, competent evidence offered by plaintiff will be considered notwithstanding it was excluded in the court below.

**8. Vendor and Purchaser § 7—**

The measure of damages for breach of contract to convey is the difference between the contract price and the market value of the lands.

**9. Vendor and Purchaser § 1;   Evidence § 27—**

In the purchaser's action for damages for breach of contract to convey, the vendor may set up the defense that the contract was subject to a condition precedent, since such condition does not contradict the written instrument but only postpones its effectiveness.

**10. Vendor and Purchaser § 1—**

Where, in the purchaser's action for damages for breach of contract to convey, plaintiff makes out a *prima facie* case, defendant's contention that he delivered the contract subject to the condition that he could get his wife to "sign the papers" is a matter of defense and cannot justify nonsuit.

**11. Trial § 27—**

Where plaintiff makes out a *prima facie* case, defendant's affirmative defense cannot justify nonsuit when plaintiff has made no admissions in regard to the defense and has offered no evidence to establish it.

**12. Vendor and Purchaser § 1—**

Where the husband enters into a contract to sell certain lands, a portion of which is owned by his wife individually and the remainder by him and his wife as tenants by the entireties, the fact that the purchaser may not compel specific performance does not bar the purchaser's right of action for damages for breach of the contract if the lands are not conveyed to him.

**13. Contracts § 20—**

The fact that the promisor's ability to perform is dependent upon the cooperation of a third person does not relieve the promisor from liability for damages if he cannot get the third person to act, since he, himself, contracted to procure the cooperation of such third party.

APPEAL by plaintiff from *McLaughlin, J.,* September 30, 1963, Civil Session of DAVIE.

*William E. Hall for plaintiff.*
*No counsel contra.*

MOORE, J.  This is a civil action for damages arising from an alleged breach of a contract to convey land. At the close of plaintiff's evidence the trial judge entered a judgment of involuntary nonsuit.

On 23 March 1963, after discussion on this and prior dates, plaintiff and defendant Charlie Coe signed the following memorandum or receipt:

"3-23-63.  Received of Jimmie Lane One Hundred Dollars as a binder on house and lots on 601 highway where his residence is Bal. Eight Thousand and Nine Hundred Dollars and 1963 Pont. Conv. or 1963 Pont. Grand Prix eather one Perfered. Bal. due when clear deed is maid if possible 3-26-63.  S/Charlie Coe S/Jimmie Lane."

On 27 March 1963 defendants, Charlie Coe and wife, Lora V. Coe, conveyed the subject property to one Armand Daniel. Plaintiff instituted this action on 6 May 1963.

The complaint alleges in substance: On 23 March 1963 defendants owned certain lots (specified by number) of the "Jacob Eaton Sub-Division" as shown on recorded map. On said date Charlie Coe "for himself and as agent" for his wife signed the receipt or contract (set out above) and at that time was paid $100. In breach of the contract defendants conveyed the land to Armand Daniel. In apt time plaintiff offered on his part to comply with the contract, and was and still is ready, willing and able to comply. Plaintiff has been damaged in the sum of $2400.

Defendant Charlie Coe, answering, admits signing the receipt and thereafter conveying the land to Daniel, and avers: Certain of the lots were owned solely by Lora V. Coe and the rest by defendants as tenants by the entirety. He signed the receipt on condition that his wife would thereafter agree to convey on the terms stated. The action is barred by the statute of frauds for that the purported contract does not contain a sufficient description of the land.

Defendant Lora V. Coe filed a separate answer setting up the same defenses asserted by Charlie Coe and, additionally, denying that her husband was her agent in signing the contract, and declaring that she had no knowledge of the contract at the time of its execution.

Plaintiff testified that he operated a second hand car lot on U. S. Highway 601 about ¾ of a mile south of Mocksville, defendants on 23 March 1963 lived "across the street" from the car lot, he (plaintiff) prepared the receipt and male defendant signed it, and was paid $100. The contract (receipt) was admitted in evidence.

The following testimony of plaintiff was excluded over his objection: He (male defendant) said he would sell me "all the land that he owned down there, which was a field behind the Phillips 66 station and his house and lots. He said there was 300 feet" of frontage on 601. "I don't know how many feet" it goes back; "I do know where the line is; he has showed me before." He pointed it out to me. The field joins the lots the house is on; "he said there was a 75-foot strip that he had sold off all but that which joined into the lot to the field and the lot. He said (there were) approximately 11 acres more or less." He pointed out the boundaries to me. "I saw him again on . . . Monday night (March 25). He came into my office and said, 'I have been offered more money for my property; I won't let you have it unless you want to give me more money. I am going to give you your money back.' I said, 'Mr. Coe, as far as my part is concerned, I have already

bought it.' . . . I saw him again on Tuesday and he told me I was not getting the property and that it had already been sold. . . . I was ready, willing and able to fulfill my part of the paper writing. Mr. Coe never offered to give me the One Hundred Dollars back again. On one occasion, I asked him for it and he just turned around and smiled and said 'Sue me.' I asked him for the One Hundred Dollars on other occasions and each time he refused."

Evidence corroborative of the plaintiff's excluded testimony was ruled out. Testimony as to damages was also excluded. J. D. Furches testified: ". . . Mr. Coe said that neither he nor his wife owned any other property on #601 other than that which is contained in the paper writing." This was also excluded, as was other evidence to the same effect.

Plaintiff concedes that the evidence offered by him, including that excluded by the court, fails to make out a *prima facie* case against defendant Lora V. Coe. He contends, however, that the court erred in its rulings on the admission of evidence and in allowing defendant Charlie Coe's motion for nonsuit.

It is apparent that the trial judge was of the opinion that the description in the written contract is insufficient as a matter of law and that it could not be aided by parol testimony.

The statute of frauds, G.S. 22-2, provides that "All contracts to sell or convey any lands . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith . . ." A memorandum or note is, in its very essence, an informal and imperfect instrument. *Phillips v. Hooker,* 62 N.C. 193. But it must contain expressly or by necessary implication the essential features of an agreement to sell. *Elliott v. Owen,* 244 N.C. 684, 94 S.E. 2d 833; *Keith v. Bailey,* 185 N.C. 262, 116 S.E. 729; *Hall v. Misenheimer,* 137 N.C. 183, 49 S.E. 104. It must contain a description of the land, the subject-matter of the contract, either certain in itself or capable of being reduced to certainty by reference to something extrinsic to which the contract refers. *Searcy v. Logan,* 226 N.C. 562, 39 S.E. 2d 593; *Timber Co. v. Yarbrough,* 179 N.C. 335, 102 S.E. 630; *Bateman v. Hopkins,* 157 N.C. 470, 73 S.E. 133; *Farmer v. Batts,* 83 N.C. 387. If the description is sufficiently definite for the court, with the aid of extrinsic evidence, to apply the description to the exact property intended to be sold, it is enough. *Lewis v. Murray,* 177 N.C. 17, 97 S.E. 750; *Simmons v. Spruill,* 56 N.C. 9.

The most specific and precise descriptions require some proof to complete the indentification of the property. More general descriptions require more. The only requisite in evaluating the written contract, as

to the certainty of the thing described, is that there be no patent ambiguity in the description. *Norton v. Smith,* 179 N.C. 553, 103 S.E. 14. There is a patent ambiguity when the terms of the writing leaves the subject of the contract, the land, in a state of absolute uncertainty, and refer to nothing extrinsic by which it might possibly be identified with certainty. *Gilbert v. Wright,* 195 N.C. 165, 141 S.E. 577; *Bryson v. McCoy,* 194 N.C. 91, 138 S.E. 420. When the language is patently ambiguous parol evidence is not admissible to aid the description. *Powell v. Mills,* 237 N.C. 582, 75 S.E. 2d 759. The descriptions considered in the following cases are patently ambiguous and could not be aided by parol evidence: *Boone v. Pritchett,* 259 N.C. 226, 130 S.E. 2d 288, — boundary description, but no designation of township, county, state or other geographical location; *Manufacturing Co. v. Hendricks,* 106 N.C. 485, 11 S.E. 568, —"thirty acres of land, being a portion of a tract formerly owned by Reuben Deaver", a designation by subsequent survey did not supply the deficiency; *Murdock v. Anderson,* 57 N.C. 77 —"one house and lot, in the town of Hillsborough." See also *Baldwin v. Hinton,* 243 N.C. 113, 90 S.E. 2d 316; *Hodges v. Stewart,* 218 N.C. 290, 10 S.E. 2d 723.

A patent ambiguity raises a question of construction; a latent ambiguity raises a question of identity. If the ambiguity is latent, evidence *dehors* the contract is both competent and necessary. A description is said to be latently ambiguous if it is insufficient in itself to identify the property but refers to something extrinsic by which identification might possibly be made. In such case plaintiff may offer evidence, parol and other, with reference to such extrinsic matter tending to identify the property, and defendant may offer such evidence with reference thereto tending to show impossibility of identification, i.e., ambiguity. *Gilbert v. Wright, supra.* The following cases are illustrative: *Carson v. Ray,* 52 N.C. 609 — "My house and lot in the town of Jefferson, in Ashe County, North Carolina" (it is not presumed that vendor had more than one lot, and if it be shown that he had more than one, it must be by extrinsic proof, and the case is then one of latent ambiguity, which may be explained by similar proof) ; *Phillips v. Hooker, supra* — "her house and lot north of Kinston"; *Norton v. Smith, supra* — "his entire tract or boundary of land consisting of 146 acres." See also *Lewis v. Murray, supra; Craven County v. Parker,* 194 N.C. 561, 140 S.E. 155.

In the instant case the subject property is "house and lots on 601 highway where his (Charlie Coe's) residence is." In our opinion this description is not, as a matter of construction, one of patent ambiguity. It admits of the possibility of identification by evidence *dehors* the con-

tract. If it be shown that Charlie Coe, at the time of the execution of the contract, resided in a house situate on lots located on highway 601, the lots are contiguous and compose the land and premises on which the house is, and the lots are defined and described by reference to a map, deed or fixed monuments, the description is sufficient. Descriptions in contracts referring to land as the place of residence of a specified person have been upheld in many cases: *Searcy v. Logan, supra* — "home place where he (vendee) now lives which he has no deed for"; *Manufacturing Co. v. Hendricks, supra* — "on his land where he now resides"; *Bateman v. Hopkins, supra* — "The farm on which I now live." The word "lots," plural, does not require the construction that the description is patently ambiguous. When used in connection with "house" it will not be presumed, in construing the contract, that the "lots" are not contiguous and do not form the premises on which the house is located, or that the house is not located on more than one lot. We have found no case in this jurisdiction involving the word "lots" in a general description, and only two cases from other jurisdictions. *Lemmon v. Lemmon*, 47 Pa. Super 604; *Thayer v. Luce & Fuller*, 22 Ohio St. 62. In those cases the descriptions were ruled insufficient, but not because of the descriptive word "lots." In the case at bar evidence, including parol evidence, was admissible to identify the subject land.

This brings us to a consideration of the evidence. The burden was upon the plaintiff to identify the property referred to in the contract. The description, "house and lots on 601 highway where his residence is," must be fitted to the land and the land fully identified by competent evidence. *Bateman v. Hopkins, supra.*

The plaintiff gave testimony as to what Charlie Coe said prior to and contemporaneously with the execution of the contract with respect to the boundaries, description and area of the land. Plaintiff also offered in evidence the testimony of others who were present at the time the contract was signed as to the declarations of Charlie Coe. The court properly excluded all such testimony. ". . . the written agreement is a merger of any parol agreement between the parties, and any and all parol testimony of prior or contemporaneous conversations or declarations tending to substitute a new and different contract than the one evidenced by the writing is incompetent." 49 Am. Jur., Statute of Frauds, § 617, p. 923.

Nevertheless, we are of the opinion that the evidence of the identity of the land was sufficient on the question of nonsuit. Charlie Coe's answer identifies the property "on which was located their (Mr. and Mrs. Coe's) home" by lot numbers with reference to recorded deeds

and a recorded map of the "Jacob Eaton lands." Material evidence may be supplied by admissions in the pleadings. *Phillips v. Hooker, supra.* Plaintiff testified, without objection, that at the time of the execution of the contract Charlie Coe lived in a house on Highway 601 about three-fourths of a mile south of Mocksville and "across the street" from the used car lot operated by plaintiff. The court excluded competent evidence tending to show that the lots were one connected body of land and the defendant had no other property on Highway 601. On appeal from a judgment of involuntary nonsuit competent evidence offered by plaintiff which was excluded in the court below will be considered in passing upon the sufficiency of the evidence. *Powell v. Deifells, Inc.,* 251 N.C. 596, 112 S.E. 2d 56; *Pinnix v. Griffin,* 219 N.C. 35, 12 S.E. 2d 667.

Plaintiff offered competent evidence tending to show: Plaintiff paid Charlie Coe $100 at the time the contract was signed; on the second day following the signing of the contract Charlie Coe told plaintiff he had been offered more money and would not let plaintiff have the property unless he was willing to pay more, and on the next day stated that the land had been sold to another party; Charlie Coe has not returned the $100 and has refused to do so; plaintiff was at all times "ready, willing and able" to fulfill his part of the contract; the market value of the property at the time of the execution of the contract was between $13,000 and $14,000; the Grand Prix automobile had cost plaintiff $3,250, the convertible $3,550. The measure of damages for breach of contract to convey land is the difference between the contract price and the market value of the land. *LeRoy v. Jacobosky,* 136 N.C. 443, 48 S.E. 796; *Rodman v. Robinson,* 134 N.C. 503, 47 S.E. 19.

Charlie Coe in his answer avers that he signed and delivered the contract on the condition that "he could get his wife . . . to sign the papers." A parol agreement of the conditional delivery of a written contract for the conveyance of land is valid, and it does not contradict the written instrument, but only postpones its effectiveness until after the condition has been performed or the event has happened. *Lerner Shops v. Rosenthal,* 225 N.C. 316, 34 S.E. 2d 206. That there was such agreement and the condition was not performed is a matter of defense and may not be considered on motion for nonsuit where, as here, plaintiff has made no admission with respect thereto and has offered no evidence establishing it.

Charlie Coe's answer states that a portion of the subject property (specifying) was owned by his wife individually, and the remainder by him and his wife as tenants by the entirety. If this be true, plaintiff could not have compelled specific performance even if the land had

not been conveyed to a third person, but such facts, if true, do not bar the maintenance of an action for damages for breach of the contract. *LeRoy v. Jacobosky, supra.* The impossibility of performance on Charlie Coe's part is not such as to excuse him. ". . . the inability to control the actions of a third person, whose cooperation is needed for the performance of the undertaking, is ordinarily not to be regarded as an impossibility avoiding the obligation." 12 Am. Jur., Contracts, § 370, p. 941. "When a contract is to do a thing which is possible in itself, the promisor will be liable for a breach thereof notwithstanding it was beyond his power individually to perform it, for it is his own fault if he undertakes to do a thing which to him is an impossibility." *Ibid,* § 378, p. 954.

When all of the facts with respect to the cause of action have been presented, it may appear that there is a latent ambiguity with respect to description or a parol condition precedent attached which will defeat the action. But upon the record before us judgment of involuntary nonsuit was improvidently entered.

Reversed.