CLAUDE S. KIDD, JR., THOMAS H. COLLINS, AND DAVID P. DIL-LARD v. C. F. EARLY AND WIFE, BESSIE D. EARLY

No. 7418SC698

(Filed 2 October 1974)

1. **Vendor and Purchaser § 3— option — sufficiency of description**

    Description of land in an option contract which refers to "200 acres more or less of the C. F. Early farm. To be determined by new survey furnished by sellers." is only latently ambiguous since the identification of the property may be determined with certainty from the survey referred to in the option; therefore, parol and other evidence is admissible to fit the description to the land. G.S. 22-2.

2. **Vendor and Purchaser § 1— option — essential terms of agreement**

    A written option contained all the essential terms of the agreement within the purview of the statute of frauds where it identified the vendors and vendees, stated that the purchase price of the 200 acres was $600 per acre, and sufficiently identified the property to be sold, notwithstanding the option was silent as to the terms of purchase, since payment in cash will be implied by law.

Judge BRITT dissenting.

APPEAL by plaintiffs from *Lupton, Judge,* 22 April 1974 Session of Superior Court held in GUILFORD County. Heard in the Court of Appeals on 29 August 1974.

This is a civil action wherein the plaintiffs (purchasers) seek specific performance of an alleged contract to purchase real property from the defendants (sellers).

The plaintiffs in their complaint alleged that on 4 August 1972 the defendants granted to Claude S. Kidd, Jr., and Howard M. Coble an option to purchase two hundred acres of the C. F. Early Farm in Guilford County. They alleged that this option was extended by the defendants for an additional thirty days by

a paper writing dated 1 September 1972, marked Plaintiffs' Exhibit A, which reads as follows:

"NORTH CAROLINA
GUILFORD COUNTY

In consideration of the sum of five hundred Dollars ($500.00) to us in hand paid this day by Howard Coble & Claude Kidd the receipt of which is hereby acknowledged, we, C. F. Early & Bessie D. Early hereby irrevocably agree to convey to Howard M. Coble & Claude S. Kidd upon demand by him within 30 days from the date hereof, upon the terms and conditions hereinafter set out, a certain tract or parcel of land located in Monroe Township, Guilford County, North Carolina, and described as follows: 200 acres more or less of the C. F. Early farm. To be determined by new survey furnished by sellers.

We agree within the time specified, to execute and deliver to Howard M. Coble & Claude S. Kidd or assignee, upon demand by him, a good and sufficient deed for the above described premises upon payment by him to us of the sum of Six hundred per acre Dollars ($600.00) under the following terms and conditions:

In the event of the exercise of this option by Howard M. Coble & Claude S. Kidd, the payment of Five Hundred Dollars ($500.00) this day made shall be credited on the purchase price, and the said purchasers may have reasonable additional time for title examination. This option is placed through G. A. Westbrook our real estate agent, and we agree to pay said agent _____ % commission for handling said sale in the event _____ exercises his option hereunder.

This option being a 30 day extension of option drawn 8-4-72.

C. F. EARLY            (SEAL)
BESSIE D. EARLY        (SEAL)"

The plaintiffs further alleged that they accepted the option by mailing the following letter, Plaintiffs' Exhibit B, to the defendants on 29 September 1972.

Kidd v. Early

"Mr. C. F. Early
Mrs. Bessie D. Early
Route 1
Browns Summit, North Carolina

Dear Mr. and Mrs. Early:

The option granted by you on September 1, 1972, for the purchase of 200 acres more or less of the C. F. Early farm in Monroe Township, Guilford County, North Carolina, is hereby exercised by delivery of a check to your joint order in the sum of $119,000 to my attorneys, Clark & Tanner, 227 Jefferson Building, Greensboro, North Carolina, to be held in trust for you and given over to you upon the occurrence of the following conditions:

(1) The furnishing of a new survey by you of the land being sold as provided in the option agreement;

(2) Delivery by you of a good and marketable warranty deed in fee simple absolute, free of all encumbrances, to the property covered by the option agreement.

If the survey determines that the land covered by the option consists of more than 200 acres, an additional check will be delivered for the amount in excess of 200 acres to our attorneys as Trustee for you. If the survey determines that the land covered by the option is less than 200 acres, you will be expected to refund to us such difference in purchase price. Please arrange to have the survey completed at the earliest possible date in order that this matter may be expedited. After delivery of the survey and preparation of the deed by your attorney, a reasonable time will be taken for title examination prior to final closing by Clark & Tanner with you.

I will expect to honor my verbal commitments (1) to allow you to harvest crops you now have in the field; (2) to lease to you acreage we discussed for your planting tobacco next year in order to allow you to make up tobacco poundage you lost this year. We will expect to have possession of the buildings on the premises, however, immediately after the final closing.

Yours very truly,
/s/ CLAUDE S. KIDD

MTB

THE DUTIES AS TRUSTEE PROVIDED IN THIS LETTER
ARE HEREBY ACCEPTED.

CLARK & TANNER
BY: DAVID M. CLARK"

The plaintiffs further alleged that on 29 September 1972
and that at all times thereafter they were ready, willing, and
able to purchase the land described in the option.

The defendants filed answer admitting the granting of
the option described in the complaint. The defendants further
admitted that the plaintiff, Claude S. Kidd, Jr., mailed Exhibit
B but denied that this letter was a valid acceptance of the option
by the plaintiffs. The defendants denied all other material
allegations in the complaint and, in addition thereto, pleaded
G.S. 22-2, the statute of frauds, in bar of the plaintiffs' claim.

The plaintiffs and defendants filed motions for summary
judgment.

An examination of the pleadings, exhibits, interrogatories,
depositions, and affidavits filed in support of and in opposition
to the motions for summary judgment tends to show the follow-
ing: On 29 September 1972, Claude S. Kidd, Jr., mailed a letter
to the defendants, C. F. Early and Bessie D. Early, purporting
to exercise the option granted by them on 1 September 1972.
The defendants acknowledged that they received this letter.
Sometime after 1 September 1972, Howard M. Coble assigned
his rights under the option to Claude S. Kidd, Jr., who then
orally assigned a one-third interest in the option to both Thomas
H. Collins and David P. Dillard. Both Thomas H. Collins and
David P. Dillard authorized Claude S. Kidd, Jr., to exercise
the option on their behalf. Frank Whitaker, Jr., President of
the Federal Land Bank Association of Winston-Salem, was pre-
pared to issue a firm commitment to the plaintiffs for a
$100,000.00 loan on or about 1 October 1972. In making his
appraisal of the property, C. F. Early pointed out to Whitaker
the approximate boundaries of the portion of his farm that
he was prepared to convey. C. F. Early, while standing in his
yard, also pointed out to Claude S. Kidd, Jr., the boundaries
of the land to be sold. On 29 September 1972 Claude S. Kidd,
Jr., had $17,173.37 in his checking account. In addition, the
plaintiffs' collectively had cash, readily marketable securities,
and other assets of well over $15,000.00 which was available to
be applied towards the purchase price. Furthermore, financial

statements of the plaintiffs show that as of 30 September 1972, Claude S. Kidd, Jr., had a net worth of $102,200.00; that as of 1 October 1972, David P. Dillard had a net worth of $128,990; and that as of 1 October 1972, Thomas H. Collins had a net worth of $30,410.00. On 4 October 1972, Granger A. Westbrook, at the request of C. F. Early, procured a survey map from the office of Jerry C. Callicut & Associates, Inc., and delivered it to Claude S. Kidd, Jr. This map was a survey of the portion of the farm that the defendants intended to retain. Early had ordered the survey to be made approximately three weeks prior to 4 October 1972. The survey map, Plaintiffs' Exhibit 4, shows that C. F. Early intended to retain 40.52 acres of the farm. Plaintiffs' Exhibits 5 and 6, which are deeds to C. F. Early and Bessie D. Early, indicate that the C. F. Early Farm contains 252.94 acres.

From an order denying plaintiffs' motion for summary judgment and entry of summary judgment for the defendants, plaintiffs appealed.

*Clark, Tanner & Williams by Eugene S. Tanner, Jr., for plaintiff appellants.*

*Griffin, Post & Deaton by Hugh P. Griffin, Jr., and William F. Horsley, and Sapp and Sapp by Armistead W. Sapp, Jr., and W. Samuel Shaffer II, for defendant appellees.*

HEDRICK, Judge.

Plaintiffs contend that the court erred in denying their motion for a summary judgment and in entering summary judgment for the defendants. While the record, in our opinion, clearly demonstrates that there are genuine issues of material fact, summary judgment for the defendants was proper if the contract sued on is so indefinite in its terms as not to satisfy the requirements of G.S. 22-2, the statute of frauds, which in pertinent part provides:

"All contracts to sell or convey any lands . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized."

It is generally recognized in this jurisdiction " . . .that a deed conveying land, or a contract to sell or convey land, or a

memorandum thereof, within the meaning of the statute of frauds, G.S., 22-2, must contain a description of the land, the subject matter thereof, either certain in itself or capable of being reduced to certainty by reference to something extrinsic to which the deed, contract or memorandum refers." *Searcy v. Logan,* 226 N.C. 562, 565, 39 S.E. 2d 593, 595 (1946).

The inquiry that is to be made with reference to the description of the land is whether it contains a patent ambiguity. "There is a patent ambiguity when the terms of the writing leaves the subject of the contract, the land, in a state of absolute uncertainty, and refer to nothing extrinsic by which it might possibly be identified with certainty." *Lane v. Coe,* 262 N.C. 8, 13, 136 S.E. 2d 269, 273 (1964) (citations omitted). Parol evidence is not permitted to aid the description if there is a patent ambiguity. *Lane v. Coe, supra; Powell v. Mills,* 237 N.C. 582, 75 S.E. 2d 759 (1953).

"A description is said to be latently ambiguous if it is insufficient in itself to identify the property but refers to something extrinsic by which identification might possibly be made." *Lane v. Coe, supra* at 13. Where there is a latent ambiguity in the description of the land, parol and other evidence is permitted to show that the extrinsic matter fits the description to the land. *Lane v. Coe, supra; Gilbert v. Wright,* 195 N.C. 165, 141 S.E. 577 (1928).

[1] In the instant case, the option clearly refers to "200 acres more or less of the C. F. Early farm. To be determined by new survey furnished by sellers." We are of the opinion that the description of the land which is the subject of the option is insufficient in itself but that reference in the option to a survey to be provided by seller makes the ambiguity of the description latent rather than patent. Identification of the property may be determined with certainty from the survey referred to in the option. Thus, since the ambiguity in the instant case is latent, parol and other evidence is admissible to fit the description to the land.

[2] The second issue to be considered is whether the option fails to meet the requirements of the statute of frauds in that it does not contain all the essential terms of the agreement. The defendants assert that because the option is silent as to the terms of purchase, the agreement cannot be enforced. We do not agree.

We recognize that before a written memorandum can satisfy the statute of frauds "it must contain expressly or by necessary implication the essential features of an agreement to sell." *Lane v. Coe, supra* at 12 (citations omitted). This court in *Yaggy v. B.V.D. Co.,* 7 N.C. App. 590, 600, 173 S.E. 2d 496, 503 (1970), *cert. denied,* 276 N.C. 728 (1970), stated that the essential elements of the contract were set forth where the instrument "clearly identif[ied] the vendor, the vendee, the purchase price, and . . . the property sold." The court then held that a memorandum will not fail merely because the time for performance (i.e., the closing date and the date possession of the property was to change hands) was not set forth in the memorandum. Rather, the court held that the law will imply that the contract is to be performed within a reasonable time.

Likewise, we are of the opinion that, at least where the memorandum does not provide for the determination of the manner of payment at some time in the future and gives no indication that the parties considered installment terms, payment in cash would be implied by law. See 49 Am. Jur., Statute of Frauds, § 355, p. 666. In the instant case the option clearly identifies the vendors, the vendees, states that the purchase price of the 200 acres is $600 per acre and, as discussed above, sufficiently identifies the property to be sold. Consequently, we feel that the essential elements of the contract have been set forth in the option and that whether there was a meeting of the minds on the terms of the contract is a question for the jury.

Therefore, since the record clearly demonstrates that there are genuine issues of material fact to be determined at trial and since the option sued on is sufficiently definite in its terms to satisfy the requirements of the statute of frauds, we are of the opinion that the trial court correctly denied the plaintiffs' motion for summary judgment and erred in entering summary judgment for defendants.

The order appealed from is

Affirmed in part; Reversed in part.

Judge BALEY concurs.

Judge BRITT dissents.

Judge BRITT, dissenting. In my opinion the description of the land set forth in the purported option was not sufficient to survive the statute of frauds. I vote to affirm the judgment appealed from.