The plaintiffs allege, in part:
"That on 11 June, 1921, the defendants, Eliza P. Harshaw, Hal C. Martin and Johnsie Martin, executed and delivered to J. W. Self, a real estate dealer of Caldwell County, North Carolina, a written contract in words and figures as follows: *Page 215 
"PROPERTY CONTRACT.
J. W. SELF, Real Estate.
LENOIR, N.C. 11 June, 1921.
"The following is a full description of my property, which J. W. Self is authorized to offer for sale according to terms specified below:
"Character, farm. Location, Collettsville, N.C. Distance from Lenoir, 10 miles. Size of lot, 135. Number of acres in cultivation, 10; bottom, 10. Timber, ______ Total, ______ Character of timber, _________ Dwellings, 2. Rooms, _________ Stories, _________ Condition, fair. Apple trees, peach trees. Other fruit, ________ Water supply, spring.
"Lowest price, $8,000 net to owners.
"Terms of payment: $5,000 cash. Balance 12 months, with interest from date of sale.
"It is agreed that graveyard shall be exempted, suitable size."
The latter part of the contract says: "The above described tract of land is known as the Harshaw Land."
"That after said 11 June, 1921, and prior to 20 June, 1921, the plaintiff, I. G. Green, agreed and contracted to purchase the said land referred to in the said paper-writing (property described in contract with J. W. Self), it being agreed between him and his coplaintiff, J. V. Gragg, that said Gragg contracted to furnish a part of the purchase price of the land described in said paper-writing, and the said I. G. Green would, after acquiring said title thereto, convey a portion of said lands thereby acquired and purchased to the said J. V. Gragg.
"That the defendants, Eliza P. Harshaw, Hal C. Martin and Johnsie Martin, by deed dated 20 June, 1921, undertook to convey, and as plaintiffs are advised, believe and allege, did convey all their right, title and interest to the plaintiff, I. C. Green, to the lands described in the paper-writing of 11 June, 1921.
"That thereafter, on 27 June, 1921, the plaintiff, I. G. Green, conveyed by proper deed in fee a portion of said tract of land described in the deed of 20 June, 1921, to his coplaintiff, J. V. Gragg, in pursuance of his agreement and contract.
"That the defendants are in the unlawful and wrongful possession of a part of the land conveyed by the plaintiff I. G. Green to the plaintiff J. V. Gragg (said portion being described by metes and bounds).
"That the plaintiffs are advised, believe and allege the title to the premises described in the foregoing paragraph was conveyed and passed to the plaintiff I. G. Green, and through him to his coplaintiff J. V. Gragg, by the deeds above referred to; that the plaintiffs, and especially *Page 216 
the plaintiff J. V. Gragg, have demanded the possession of the same, and the defendants have wrongfully refused to surrender the same.
"That reasonable rental for the 2 acres and 18 poles is $60."
For a second cause of action, the plaintiffs allege, in part:
"That the defendants, as the plaintiffs are informed, believe and allege, a few days after they had received the full purchase price of the lands referred to and described in the said paper-writing of 11 June, 1921, and the execution of the deed aforesaid, began to assert title to and claimed that portion of said land which is described in the first cause of action, the value of said portion being about one-fourth the value of the entire tract of land, claiming and asserting that they had not conveyed the same to the plaintiff I. G. Green by the said deed to him, although they knew the said Green was paying the full purchase price in reliance upon the fact that the defendants had agreed to convey, and with the belief and understanding that they were conveying to him the said portion of the said tract as well as all of the remainder thereof to which they or any of them had title.
"That defendants, Eliza P. Harshaw, Hal C. Martin and Johnsie Martin, not only by the said paper-writing of 11 June, 1921, but by their conduct and spoken words, represented to the plaintiffs, and to other prospective purchasers with whom J. W. Self, their agent, might enter into negotiations for the sale of the said lands, that they were offering to sell upon the terms stated in said instrument all the right, title and interest that they or each of them had in the said 135-acre tract of land, and in any and every part thereof, and if the plaintiffs had not so believed and relied on said representations they would not have parted with their money, as said defendants well knew.
"That when plaintiffs learned that the defendants, Eliza P. Harshaw, Hal C. Martin and Johnsie Martin, were setting up claim and declaring that they had not conveyed to the plaintiff I. G. Green that portion of said tract described in the first cause of action, they caused to be prepared a deed specifically conveying the same, and requested the defendant Eliza P. Harshaw that she execute, acknowledge and deliver the same to him; that she refused and still refuses to execute the said deed, notwithstanding the contract of 11 June, 1921, to the said J. W. Self.
"Wherefore, plaintiffs pray judgment upon the first cause of action, that the plaintiff J. V. Gragg be declared the owner in fee and entitled to the immediate possession of the 2 acres and 18 poles (described by metes and bounds in the first cause of action); or if, under the court's construction of the deed of 20 June, 1921, the title to the land in question was not conveyed, and did not pass, then upon the second cause of action plaintiffs pray a decree requiring that the defendants, and *Page 217 
more particularly Eliza P. Harshaw, specifically perform the contract of 11 June, 1921, by causing to be conveyed to the plaintiff J. V. Gragg that portion of the said lands, and that the plaintiffs recover their costs, to be taxed by the clerk, and for all other and general relief as may be just and right in the opinion of the court."
The defendant Eliza P. Harshaw, answering, admits signing the option to J. W. Self. Admits signing deed to I. G. Green, "but she denies that she intended to convey or that she did convey any part of the land in controversy in the action," the 2 acres and 18 poles; and answering further, says:
"That she disclaims any right, title or interest in any lands described in the complaint except the 2 acres and 18 poles described in the complaint, and as to that portion she avers she never conveyed the same or any part thereof to any one; neither did she attempt or agree to convey the same to any person whatsoever."
Hal C. Martin and Johnsie Martin answer and say:
"That they disclaim any right, title to, or interest in the lands in controversy."
W. P. Spencer answers and says:
"That he disclaims any right or title to the lands in controversy in this action, and has no interest in the same except that of a renter or tenant of the defendant Eliza P. Harshaw, and now stands ready to surrender whatever possession he has to any person or persons whom the court may adjudge to be the owner of the land in controversy."
The following issues were submitted to the jury and their answers to the same:
"1. Did the defendants, by their contract with J. W. Self, dated 11 June, 1921, authorize the sale of and agree to convey the lands in controversy? Answer: `Yes.'
"2. Did the defendants, by their deed to plaintiff I. G. Green, dated 20 June, 1921, convey the lands in controversy? Answer: `No.'
"3. Did defendants, wrongfully and in violation of the said contract, dated 11 June, 1921, fail to convey the lands in controversy? Answer: `Yes.'
"4. What is the annual rental value of the lands in controversy? Answer: `$60.'"
The court below gave judgment in accordance with the verdict for the 2 acres and 18 poles — being the land conveyed by Jacob N. Harshaw to Eliza P. Harshaw on 11 June, 1906, and order to make title as provided in C. S., 608. The defendant Eliza P. Harshaw excepted and appealed to this Court and assigned errors, which will be considered in the opinion. The other defendants did not appeal.
The other material facts will be set forth in the opinion. *Page 218 
The suit in controversy involves 2 acres and 18 poles of land. Moses N. Harshaw and wife, Mary M. Harshaw, on 11 March, 1901, made a deed to their son, Jacob N. Harshaw, for the land in controversy. Jacob N. Harshaw, on 11 June, 1906, deeded the land to Eliza P. Harshaw, his wife, who is the defendant, appellant, in this case. Moses N. Harshaw and wife, Mary M. Harshaw, on 22 December, 1906, conveyed the 135 1-3-acre tract to Jacob N. Harshaw and his children. That the 2 acres and 18 poles was excepted from this conveyance. The gist of this suit: It is claimed that the 2 acres and 18 poles and the 135 1-3 acres were considered one tract, known as the "Harshaw Land," and were sold together. Jacob N. Harshaw is dead and left surviving him his widow, Eliza P. Harshaw, and one child, Johnsie Martin, who married Hal C. Martin. The deed from Eliza P. Harshaw, Hal C. Martin and Johnsie Martin to one of the plaintiffs, I. G. Green, is dated 20 June, 1921, and it is claimed was made in pursuance of the "J. W. Self property contract" set forth in the complaint. The deed states, "Being the land deeded by Moses N. Harshaw and wife, Mary M. Harshaw, to Jacob N. Harshaw, the period of his natural life, and after his death to his children." And describes it as "containing 135 1-3 acres, more or less." There is reserved and excepted from the deed certain lots which were conveyed before by Moses N. Harshaw and wife, Mary M. Harshaw, to other parties; said lots contained in the above boundary and deeds for same being registered in the office of the register of deeds for Caldwell County, N.C. to which deeds and the records thereof reference was made for greater certainty.
The defendant contends: That there were no allegations in the complaint setting out facts sufficient to constitute an action for specific performance. That the action should have been dismissed and a judgment as of nonsuit allowed by the court below. Under our liberal practice, we think the complaint sufficient. The prayer of the plaintiffs asks for specific performance "and for all other and general relief as may be just and right in the opinion of the court."
The issues submitted, the facts adduced on the trial, the contentions set forth by the court on the trial below, all show that the basis of the action was specific performance. The complaint in substance is sufficient.
If the two causes of action in the complaint were not stated definite and certain enough, the defendant could have asked leave of the court *Page 219 
to have this done. The defendant answered. The objector must move in apt time. When a good cause of action is set out, but defective in form, the court may require the pleadings to be made definite and certain by amendment. Barbee v. Davis, ante, 78, and cases cited.
Article IV, section 1, Constitution of N.C.: "The distinctions between actions and suits shall be abolished; and there shall be in this State but one form of action for the enforcement or protection of private rights or the redress of private wrongs, which shall be denominated a civil action; and every action prosecuted by the people of the State as a party against a person charged with a public offense, for the punishment of the same, shall be termed a criminal action. Feigned issues shall also be abolished, and the fact at issue tried by order of court before a jury."
"Under the former system of practice a party might be turned out of equity, and told to bring his action at law, or be dismissed by one door of the court room, because he had sued in debt or covenant, when he might come back through another door with an action of trespass on the case or replevin or detinue. But now these refinements have been abolished, because not conducive to the administration of justice; and if a party goes into court legally, he will not be turned out to come into court some other way.Sloan v. R. R., 126 N.C. 490. It would be a violation of this section of the Constitution to permit a party to defeat a recovery solely upon the ground of the form of the action." Constitution of N.C. annotated by Connor and Cheshire, p. 147.
Connor, J., in Pearson v. Millard, 150 N.C. 311, says: "While, as consistently held by this and all other courts administering equitable rights and remedies, specific performance is not a matter of absolute right, yet it will be granted when it is apparent, from a view of all the circumstances of the particular case, that it will subserve the ends of justice and work no hardship upon the party who has entered into the contract."
"In a suit for specific performance brought by the vendor, the measure of the kind of relief a court of equity will grant is not necessarily determined or controlled by the relief demanded in the complaint, but by the facts set out in the pleadings. A prayer for general relief in a bill includes specific performance, where the allegations of the bill are such as to entitle the complainant to that relief. Where plaintiff prays for a money judgment and for such further relief as he may be entitled to, and sets out facts entitling him to specific performance, that relief may be granted, for a prayer for general relief includes a prayer for specific performance." Councill v. Bailey, 154 N.C. 54; 11 Enc. Dig. of Reports of N.C. 403. *Page 220 
The defendants, and especially the defendant Eliza P. Harshaw, requested the following instruction: "The first issue submitted to you, gentlemen of the jury, is: Did the defendants, by their contract with J. W. Self, dated 11 June, 1921, authorize the sale of and agree to convey the lands in controversy? The lands in controversy are conceded to be or to consist of the two-acre tract of land described in the deed from Moses N. Harshaw and wife to Jacob N. Harshaw, of date 11 November, 1901 (in record 11 March), and in the deed from Jacob N. Harshaw to the defendant Eliza P. Harshaw, dated 11 June, 1906, and this particular two-acre tract of land is the land in controversy referred to in this issue. Upon the entire evidence in this case the court instructs you that it is your duty to answer this issue `No.'" The court declined to give this instruction, and the defendants, and especially the defendant Eliza P. Harshaw, excepted.
This calls for the construction of the "property contract," made by the defendants, Eliza P. Harshaw, Hal C. Martin and Johnsie Martin, to J. W. Self, dated 11 June, 1921, as set out in the complaint.
A patent ambiguity cannot be explained by parol, a latent ambiguity can. We think the ambiguity latent and can be explained by parol, and the statute of frauds does not apply.
In Norton v. Smith, 179 N.C. 553, the contract was to convey the "entire tract or boundary of land consisting of 146 acres." Walker, J., in that case, goes fully into this matter, and says: "In the subsequent case of Mead v. Parker, 115 Mass. 413, where the writing was in these words: `This is to certify that, I, Jonas Parker, have sold to Franklin Parker a house on Church Street for the sum of $5,500,' the Court held that evidence was competent to show what house defendant owned on Church Street; if he had only one, and decreed specific performance of the contract, remarking as follows: `The most specific and precise description of the property intended requires some proof to complete its identification. A more general description requires more. When all the circumstances of possession, ownership, and situation of the parties, and of their relation to each other and the property, as they were when the negotiation took place and the writing was made, are disclosed, if the meaning and application of the writing, read in the light of those circumstances, are certain and plain, the parties will be bound by it as a sufficient written contract or memorandum of their agreement.' So it has been held that a description of land, as that on which a certain person resides, is sufficient to identify it by parol evidence. Morrisey v. Love 26 N.C. 38; Simmons v. Spruill,56 N.C. 9; or by its name, as the `Home Place,' the `Lynn Place,' or the `Leonard Greeson Place.' Smith v. Low, 24 N.C. 457. These positions are *Page 221 
fully sustained by Lewis v. Murray, 177 N.C. 17 at pp. 19-21, citingBateman v. Hopkins, 157 N.C. 470; Thornburg v. Masten, 88 N.C. 293;Farmer v. Batts, 83 N.C. 387, and other cases. Every valid contract must contain a description of the subject-matter; but it is not necessary it should be so described as to admit of no doubt what it is, for the identity of the actual thing and the thing described may be shown by extrinsic evidence. Fry on Specific Performance, sec. 209; Pomeroy on Contracts, sec. 90, and note; Buckhorn L. and T. Co. v. Yarbrough, ante, 335. We have not the slightest doubt that this description is not a patent ambiguity, but, at most, is a latent one, susceptible of being made certain by extrinsic proof. It is far more accurate than some of the descriptions held by the authorities to be sufficiently definite, as against a plea of the statute of frauds, to admit parol evidence for the purpose of fitting the description to the land intended to be conveyed."
We think the court below made no error in admitting parol testimony to fit the description to the land intended to be conveyed.
Another position is taken by the defendant in the brief: "It is clear on the evidence that neither Self nor the defendant believed, or had any reason to believe, that the contract of 11 June included the two-acre lot. This is shown by the fact that Self prepared the deed on 20 June which was tendered to the defendant for execution in compliance with, and in full performance of her prior contract to convey, and she later, some time after the delivery of the deed, informed Self that she had signed a contract to convey the farm, and not a farm and a residence lot. No parol evidence was offered tending to show that the two-acre lot was considered, treated or used with the farm, and as a part thereof, and if such had been permitted, its effect would have been to nullify the statute of frauds."
Although the deed of 20 June, containing 135 1-3 acres, reserved and excepted the lots before conveyed by Moses N. Harshaw and wife, and the two acres and 18 poles had been theretofore conveyed by them, yet it was shown in the evidence that the main dwelling house was on the two acres and 18 poles, and it was included in, considered and treated as a part of the Harshaw land, that is the entire tract 135 1-3 acres.
Both contract and deed were signed by Eliza P. Harshaw, Hal C. Martin and his wife, Johnsie Martin. Eliza P. Harshaw is the mother of Johnsie Martin, and Hal C. Martin is her son-in-law. The contract refers to a piece of land in Collettsville, N.C. about 10 miles from Lenoir. In the contract the land is referred to as a farm, size of lot 135 (acres); 10 acres in cultivation, 10 acres in bottom; on it 2 *Page 222 
dwelling-houses, apple trees, peach trees, spring; tract of land known as Harshaw Land. On this farm of 135 1-3 acres that plaintiffs claim was bought were two dwelling-houses, and the 2 acres and 18 poles (defendant claims were reserved) were included in the 10-acre bottom, about the center of the bottom-land. The land was run out, the outside boundaries of the 1351-3 acres included the 2 acres and 18 poles on which the two dwelling-houses are located. No line of the lot of 2 acres and 18 poles in dispute touches any one of the outer lines of the 135 1-3-acre tract. A tenant cultivated it, and the rents were collected by Eliza P. Harshaw. That the 2 acres and 18 poles and the houses and farm were all treated as one piece of property. It had all been operated together, and the public generally treated it and considered it as a farm, and that part of the 2 acres and 18 poles was treated in conjunction with the farm. The price was such as to include the entire boundary, including the 2 acres and 18 poles. Plaintiffs claim $8,000 was paid for the entire land; that the 2 acres and 18 poles was worth about one-fourth of that amount. The farm could not be utilized without a dwelling-house. The price received by Eliza P. Harshaw was sufficient to show that she had an interest in the farm and this lot, and that it was divided equally, because she got $4,000 for her part.
Practically all these facts appear in the contentions of the plaintiffs given by the court below, which were not objected to. The record shows the contentions were given fairly for both plaintiffs and defendant. Under all the evidence and all the facts and circumstances of this case, the language in the "J. W. Self property contract" of 11 June did not preclude parol evidence. Norton v. Smith, supra; Buie v. Kennedy, 164 N.C. 299; McGee v.Craven, 106 N.C. 351.
The second issue, "Did the defendants, by their deed to plaintiff I. G. Green, dated 20 June, 1921, convey the lands in controversy?" Under the charge of the court the jury answered "No." The defendants contend, "This deed was executed in performance of her contract," and there is neither allegation in the complaint nor evidence that by reason of either accident, fraud or mutual mistake, anything was included in or omitted from this deed.
From the position taken by the court in this case parol evidence is permitted, on account of the latent ambiguity, to show that the "J. W. Self property contract" included the 2 acres and 18 poles. The deed of 20 June, 1921, did not convey this land — 2 acres and 18 poles. This suit is not brought to set aside that deed for accident, fraud, or mutual mistake. That deed is good as far as it goes, but this action is for specific performance of the original "J. W. Self property contract." This suit is against the defendant to perform the entire contract, which included the 2 acres and 18 poles. *Page 223 
The defendant also assigned as error: "The ruling of the court declining to instruct the jury, as prayed by defendants, substantially to the effect that there was no evidence that Hal C. Martin was the agent of Mrs. Eliza P. Harshaw or that he entered into any contract as her agent with J. W. Self for the sale of the lands in controversy, or that she subsequently ratified any contract therefor entered into in her behalf by the said Martin with the said Self, and that the conversation between Self and the said Martin in regard to the matter was not competent evidence against Mrs. Eliza P. Harshaw."
It appeared in evidence that Eliza P. Harshaw stated she wanted to sell all the land — the Harshaw Land. It appeared in evidence that she only had a dower interest in the land other than the 2 acres and 18 poles. That the land brought $8,000. The 2 acres and 18 poles was worth about $2,000. She received one-half of the money, $4,000, from J. W. Self. That her dower interest in the one-third cash value (if the contract did not include the 2 acres and 18 poles) would not perhaps be half of that amount — showing that she was selling the entire tract of land; that Hal C. Martin made the contract; Eliza P. Harshaw, he and his wife all three signed the "J. W. Self property contract" — all acting together. All this evidence was to show that Martin was her agent, and she ratified the contract Martin made with Self, and it was made on her behalf as well as for his wife, Johnsie Martin. It was evidence sufficient for the jury to pass on whether he was her agent, or she ratified his act. Anderson v.Corporation, 155 N.C. 135.
The court charged: "The court further instructs you that the conversation between Self and Martin in regard to the matter is not competent evidence against Mrs. Eliza P. Harshaw, unless you find that she ratified it." This charge was favorable to defendant.
On the third issue, "Did the defendants wrongfully and in violation of the said contract dated 11 June, 1921, fail to convey the lands in controversy?" The court charged the jury in regard to this issue: "Now the burden of proof is on the plaintiffs to satisfy you of the fact by the greater weight of the testimony as to the first issue. The plaintiffs contend, gentlemen of the jury, that although the second issue may be decided against them, that is, that the deed did not convey the two acres, yet from the evidence offered it was the intention of the parties to convey it, and that it ought to be conveyed, and that this was wrongful, in violation of the contract; that is, it was wrongful in that it did not convey it and refused to convey it."
After stating the contentions of the parties, the court charged: "The court instructs you that it is not the understanding of any party to a contract as to its terms or its meaning which settles a dispute. A *Page 224 
contract must speak for itself, and while parol evidence may be competent to explain a contract, parol evidence is not competent in this case either to contradict, vary or add to the terms of a written contract, except where it is vague, uncertain or ambiguous, then parol evidence is offered for the purpose of explaining the uncertain or vague or indefinite part of it. You, however, have a right, and it is your duty, to refer to all the deeds and contracts in order to ascertain whether this 2-acre tract on 11 June, 1921, was or was not a part of the Harshaw farm or included in the contract."
We think this charge of the court below correct under the facts and circumstances of this case. It appears from the record that the court gave the contentions of plaintiffs and defendants on the issues minutely and carefully, and the law bearing on the facts. The whole matter was left to the jury, and they have answered the issues against the defendant.
We have examined the entire record and briefs, the exceptions to the issues submitted, the prayers for instruction and, also, cases cited, with care, and can find no prejudicial or reversible error.
No error.